O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| OCTAVIO RAMOS, | Case No. EDCV 07-599-MLG |
| Plaintiff, | MEMORANDUM OPINION AND ORDER |
| v. | |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | |
| Defendant. | |

Plaintiff Octavio Ramos seeks judicial review of the Commissioner's denial of his application for Disability Insurance benefits and Supplemental Security Income benefits under the Social Security Act. For the reasons stated below, the decision of the Social Security Commissioner is **AFFIRMED**.

**I. Facts and Procedural History**

Plaintiff was born on August 28, 1950. He completed twelfth grade and three years of postsecondary education. (Administrative Record ("AR") 11.) Plaintiff's work history includes employment as a truck

driver. (AR 11.) Plaintiff has not been gainfully employed since January 1, 2001. He stopped working due to ulcers[1] and upper, mid, and lower back problems. (AR 68.) Plaintiff's subjective complaints include pain, numbness, and tingling on his left side, loss of grip, and lower back and neck pain. (AR 137.) Plaintiff has been diagnosed with mild cervical strain and mild disc disease in the lumbar spine. (AR 12.)

Plaintiff filed an application for Social Security disability benefits on October 19, 2004, and an application for Supplemental Security Income benefits on September 29, 2004. (Joint Stipulation ("Joint Stip.") 10.) The Commissioner denied Plaintiff's application on December 15, 2004, and again after Plaintiff's request for reconsideration, on January 28, 2005. (AR 10.) After two postponements to enable Plaintiff to obtain legal assistance and additional medical records to support his claims, Administrative Law Judge ("ALJ") Joseph D. Schloss held a hearing on September 26, 2006. (*Id.*) Plaintiff was represented by counsel at the hearing.

The ALJ denied Plaintiff's application on December 7, 2006, concluding that Plaintiff was capable of performing his past relevant work as a truck driver and, therefore, was not disabled under the Social Security Act.[2] (AR 16.) Applying the five-step sequential analysis

---

[1] Plaintiff has apparently abandoned his claim that ulcers prevent him from working. (*See* AR 140.)

[2] Specifically, the ALJ determined that Plaintiff has a residual functional capacity to lift and carry 25 pounds frequently and 50 pounds occasionally, to sit for 6 hours in an eight-hour day, and to stand for 6 hours in an eight-hour day. (AR 16.) The ALJ further indicated that Plaintiff should avoid concentrated exposure to extreme cold or heat and to such hazards as machinery and heights. (*Id.*)

mandated by the Social Security Regulations,[3] the ALJ determined (1) that Plaintiff has not engaged in substantial gainful activity since his alleged onset date of disability; (2) that Plaintiff's impairment was "severe"; (3) that Plaintiff's impairment did not meet or equal a listed impairment in Appendix 1 of the regulations; and (4) that Plaintiff was able to perform his past relevant work as a truck driver. (AR 11-15.) Given his conclusion that Plaintiff could perform his past work, the ALJ did not consider the fifth step in the analysis.

The Appeals Council denied Plaintiff's request for review of the ALJ's decision on March 21, 2007. (AR 3.) Plaintiff then filed this action on May 23, 2007. (Complaint 1.) Plaintiff alleges that the ALJ erred in three particulars: (1) that the ALJ failed to consider the mental and physical demands of Plaintiff's past relevant work; (2) that the ALJ posed an improper hypothetical to the vocational expert who testified at the hearing; and (3) that the ALJ failed to develop the record. (Joint Stip. 2-3.) Plaintiff asks this Court to order an award of benefits, or, in the alternative, to remand for a new administrative hearing. (Joint Stip. 21.)

**II.  Standard of Review**

Under 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits. The Commissioner's or ALJ's decision must be upheld if it is "supported by 'substantial evidence'

---

[3] The five steps are as follows: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant's impairment is "severe"; (3) whether the impairment meets or equals one of the listings in 20 C.F.R. § 404, Subpart P, Appendix 1; (4) whether the claimant is able to return to past relevant work; and (5) whether the claimant can do other types of work. 20 C.F.R. § 404.1520(a)(4). These steps are cumulative, meaning that the ALJ need not consider further steps after finding that a step does not favor the claimant.

3

and if the proper legal standard was applied." *Mayes v. Massanari*, 276 F.3d 453, 458-59 (9th Cir. 2001). Substantial evidence means such evidence as a reasonable person might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Widmark v. Barnhart*, 454 F.3d 1063, 1066 (9th Cir. 2006). It is more than a scintilla, but less than a preponderance. *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006). To determine whether substantial evidence supports a finding, the reviewing court "must review the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1996). "If the evidence can support either affirming or reversing the ALJ's conclusion," the reviewing court "may not substitute [its] judgment for that of the ALJ." *Robbins*, 466 F.3d at 882.

**III. Analysis**

As discussed above, Plaintiff contends that the ALJ's analysis was deficient for three reasons. The Court will address each issue in turn.

**A. Whether the ALJ Properly Considered the Mental and Physical Demands of Plaintiff's Past Relevant Work**

The ALJ concluded at step four that Plaintiff was capable of performing his past relevant work as a truck driver. In doing so, he relied on the examining physician's opinion and the vocational expert's testimony. (AR 15.) Plaintiff argues that the ALJ failed to provide a sufficient rationale for concluding that Plaintiff was capable of performing his past work as a truck driver, in that the ALJ's opinion did not include specific findings as to the mental and physical demands of the work itself. (Joint Stip. 4.) The Court is not persuaded by

Plaintiff's argument, which appears to emphasize form over substance.

### 1. Plaintiff's Residual Functional Capacity

Before evaluating whether Plaintiff's impairments precluded him from returning to his past relevant work as a truck driver, the ALJ was required to ascertain Plaintiff's residual functional capacity ("RFC"). 20 C.F.R. § 404.1520(a)(4)(iv). The ALJ considered the medical records and testimony regarding Plaintiff's alleged limitations in considering the appropriate RFC. The ALJ stated, "Given the scarce medical records in the file, the claimant's credibility regarding his symptoms and the extent to which they limit him assumes increased importance in this case." (AR 13.)

The ALJ then undertook a lengthy credibility evaluation, at the conclusion of which he found Plaintiff not credible. The ALJ first noted that Plaintiff's failure to seek medical treatment was not consistent with his allegedly disabling pain. (AR 13-14.) The ALJ was not convinced by Plaintiff's claim that indigence prevented him from seeking treatment, given the availability of government-funded medical facilities for the indigent and the lack of evidence that Plaintiff had pursued such care. (*Id.*) The ALJ also noted several inconsistencies regarding the onset date of Plaintiff's alleged disability, as well as inconsistencies in Plaintiff's claimed symptoms in the medical records and his application for benefits. The ALJ further rejected Plaintiff's testimony because his statement of daily activity, that he collects $20-30 in cans and bottles per week from his front yard alone, was inconsistent with his allegation that pain and numbness severely restricts his mobility. (AR 14.) The ALJ concluded, "The claimant's attempts to explain away his work activity erode his credibility even further." (*Id.*) Plaintiff does not challenge the ALJ's credibility

determination.

After discounting Plaintiff's credibility, the ALJ determined that the medical records did not support Plaintiff's claim that his impairments precluded him from working. The ALJ stated that although the medical records reflected some degenerative disease in Plaintiff's lumbar and cervical spine, "this level of degeneration could not be expected to be work-preclusive." (*Id.*) The ALJ then adopted the examining physician's opinion that Plaintiff's RFC includes lifting and carrying 25 pounds frequently and 50 pounds occasionally, sitting for six hours in an eight-hour workday, and standing and/or walking for six hours in an eight-hour workday. (AR 15.) In addition, the ALJ accepted the additional environmental restrictions suggested by the reviewing physician that Plaintiff should "avoid concentrated exposure to extreme cold and heat, and to hazards, including machinery and heights." (*Id.*; *see* AR 102.)

These limitations place Plaintiff's abilities squarely within the medium exertion level, which is defined as "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds." 20 C.F.R. 404.1567(c).

### 2. Plaintiff's Past Relevant Work

Plaintiff's past relevant work experience is truck driving. The Dictionary of Occupational Titles ("DOT") defines "truck driver" as follows:

> Drives truck with capacity of more than 3 tons, to transport materials to and from specified destinations: Drives truck to destination, applying knowledge of commercial driving regulations and area roads. Prepare receipts for load picked up. Collects payment for goods delivered and for delivery

charges. May maintain truck log, according to state and
federal regulations. May maintain telephone or radio contact
with supervisor to receive delivery instructions. May load and
unload truck. May inspect truck equipment and supplies, such
as tires, lights, brakes, gas, oil, and water. May perform
emergency roadside repairs, such as changing tires, installing
light bulbs, tire chains, and spark plugs. May position blocks
and tie rope around items to secure cargo during transit.

DICOT 905.663-014. Truck driving is classified as medium-exertional level, semi-skilled work. *Id.*

The vocational expert, relying on the DOT definition of truck driver,[4] testified at the hearing that a person with Plaintiff's educational background, RFC of medium-exertional level, and his additional limitations of avoiding concentrated exposure to extreme cold and heat, and to hazards, including machinery and heights, would be able to work as a truck driver. (AR 143.) The ALJ accepted the vocational expert's opinion and determined that Plaintiff would be able to perform his past relevant work. (AR 15.)

Plaintiff contends that the ALJ should have been more specific in his analysis of the interaction between the RFC and the past relevant work: "[The ALJ] did not adequately analyze the mental and physical demands of Plaintiff's past relevant work or how these demands relate to Plaintiff's RFC." (Joint Stip. 5.) However, in assessing a claimant's ability to perform past relevant work, an ALJ may consider the physical and mental demands of the job either as actually performed or as usually

---

[4] Although the vocational expert did not expressly state that his opinions were based on the DOT definitions, the ALJ asked him to explain any divergence from the DOT in forming his opinion. (AR 142.) The vocational expert never indicated any such deviation. The Court will accept that the expert based his opinion on the DOT.

performed in the general economy. S.S.R. 82-62, *3 ("The RFC to meet the physical and mental demands of jobs a claimant has performed in the past (either the specific job a claimant performed or the same kind of work as it is customarily performed throughout the economy) is generally a sufficient basis for a finding of 'not disabled.'"). The ALJ may rely on the DOT for establishing the mental and physical demands of a particular job as usually performed in the general economy. S.S.R. 82-61, *2; *Pinto v. Massanari*, 249 F.3d 840, 845 (9th Cir. 2001)("[T]he best source for how a job is generally performed is usually the [DOT].").

Once an ALJ determines that the claimant's limitations do not preclude the work as usually performed in the general economy, the ALJ must find that the claimant is not disabled. S.S.R. 82-61, *2. The ALJ need not conclude that the claimant can return to the prior position as actually performed. *Pinto*, 249 F.3d at 845 ("We have never required explicit findings at step four regarding a claimant's past relevant work both as generally performed *and* as actually performed.")(emphasis in original). The ALJ accepted the vocational expert's testimony that Plaintiff could perform his past relevant work, as usually performed in the general economy.[5]

The only question, then, is whether the ALJ should have made more specific findings about the impact Plaintiff's impairments would have on his job as a truck driver. Relying on Social Security Ruling 82-62, Plaintiff argues that the ALJ should have included "detailed information about strength, endurance, manipulative ability, mental demands and other job requirements necessary to perform the job of truck driver."

---

[5] Although the ALJ did not expressly state that his finding was based on the Plaintiff's ability to do the job as usually performed in the general economy, the ALJ's reliance on the vocational expert's testimony in reaching his decision implies this basis.

(Joint Stip. 4.) However, Social Security Ruling 82-62 suggests the ALJ gather additional information "as appropriate." S.S.R. 82-62, *4. The relevant information regarding the mental and physical demands of the job is contained in the DOT. Although the ALJ did not restate the DOT definition for truck driver in his opinion, the Court is not convinced that he is required to do so in setting forth his rationale for denying benefits.

The ALJ's questioning of the vocational expert at the hearing allowed the ALJ to compare the "physical and mental demands" of Plaintiff's past work with his RFC. The hypothetical posed to the vocational expert incorporated the medical evidence in the record and the description of Plaintiff's past work as supplied by the DOT. The ALJ was entitled to rely on the vocational expert in reaching his disability determination. *See* 20 C.F.R. § 416.960(b)(2) (ALJ may rely on a vocational expert's "expertise and knowledge concerning the physical and mental demands of a claimant's past relevant work, either as the claimant actually performed it or as generally performed"). The ALJ applied the correct legal standard and his decision is supported by substantial evidence in the record.

**B. Whether the Hypothetical the ALJ Posed to the Vocational Expert Was Proper**

Plaintiff challenges the hypothetical the ALJ posed to the vocational expert at the hearing, claiming that the hypothetical was "inadequate." (Joint Stip. 12.) The ALJ posed the following hypothetical to the vocational expert:

> I want you to assume a 50 year old individual with 15 years of education that's done that job [truck driving] who's

1         restricted to occasionally lifting 50 pounds, frequently 25.
2         Can sit, stand, and walk six, plus six hours out of an eight
3         hour day. Should avoid concentrated exposures to cold, heat,
4         and hazardous machinery for some reason or another. I don't
5         know why, but that's in there. Can that person do his past
6         relevant work?
7  (AR 143.)

8    The ALJ adopted the limitations included in this hypothetical from
9  the examining and reviewing physicians' reports. As discussed in the
10 previous section, the examining and reviewing physicians agreed on
11 Plaintiff's general limitations, and the reviewing physician imposed
12 additional environmental restrictions of avoiding concentrated exposure
13 to hazards, including machinery and heights. (AR 102.) Although the ALJ
14 expressed doubt at the hearing about the necessity for the environmental
15 restrictions, as demonstrated by the above quote, the ALJ adopted those
16 restrictions in the hypothetical and ultimately in his opinion. (AR 15.)

17    Plaintiff contends that the hypothetical was improper because
18 Plaintiff believes that a truck falls into the category of "hazardous
19 machinery" to which Plaintiff is to avoid concentrated exposure.
20 Plaintiff characterizes this issue as the ALJ's "failed duty to present
21 all of the Plaintiff's impairments and limitations to the [vocational
22 expert]," (Joint Stip. 14), but the argument really appears to be a
23 matter of semantics. Contrary to Plaintiff's assertion, the ALJ
24 accurately presented all of Plaintiff's limitations to the vocational
25 expert. The real issue is whether the vocational expert and the ALJ
26 misunderstood the meaning of the term "machinery."

27    The Court agrees that a vehicle is properly characterized as a
28 "machine" in the general sense. However, *Dictionary.com*, on which

Plaintiff relies for his argument, also includes in the definition of "machine" such items as a sewing machine, bicycle, typewriter, and vending machine.[6] Common sense suggests that the restriction is not so broad as Plaintiff suggests, but requires a more contstrained interpretation. In any event, the limitation does not indicate that Plaintiff should avoid concentrated exposure to *machines*, but to *machinery*. *Dictionary.com* defines "machinery" as "an assemblage of machines or mechanical apparatuses," among other things,[7] which does not include a truck.

More importantly, although the DOT does not specifically define "machinery," it does include a substantial number of machinery-related jobs, all of which refer to industrial-type machinery, not vehicles. For example, the DOT defines "machine-adjuster helper" as follows:

> Assists MAINTENANCE MECHANIC (any industry) 638.281-014 in repairing and maintaining machinery and mechanical equipment: Carries tools and equipment to and from storage and working areas. Holds scaffolding members in place or tightens bolts to erect working platforms about machines. Pulls handles to raise materials and tools to working levels. Loosens bolts to dismantle machinery. Drills and breaks up concrete, using jackhammer. Digs trenches for machinery foundations. Mixes and pours concrete for foundations. Cleans machines with sandpaper, solvent, and wiping rags to prepare surfaces for painting. Oils and greases machines.

DICOT 683.683-018. The references in this definition to machines and machinery unquestionably do not include vehicles. Moreover, the DOT also

---

[6]   http://dictionary.reference.com/browse/machine.

[7]   http://dictionary.reference.com/browse/machinery.

11

lists a number of automobile-specific jobs, including, for example, "auto-body painter," DICOT 845.381-014, "auto-body repairer," DICOT 807.381-030, and "automobile mechanic," DICOT 620.261-010. Nowhere in the DOT is an automobile or vehicle referred to as a machine or machinery, which suggest to this Court a clear distinction between the two.

Finally, the vocational expert explicitly rejected counsel's suggestion that the machinery limitation applied to driving a truck. (AR 130.) The discussion at the hearing between the ALJ, the vocational expert, and Plaintiff's counsel was as follows:

> ALJ: It says that he is to avoid concentrated exposure, which would be moderate exposure to machinery and heights, not be in a truck. Machinery to me is machinery.
> VE: No. No. That's wouldn't preclude truck driving.
> ALJ: Yeah.
> ATTY: It would not preclude truck driving?
> ALJ: No.
> VE: No.

(AR 130.) Plaintiff dismisses the vocational expert's explicit rejection of his interpretation of the restriction, asserting, "[I]t is questionable as to whether the VE is even aware of what 'machinery' entails." (Joint Stip. 12.) This contention is meritless. A vocational expert is just that: an expert, and the person with the most knowledge of the relevant occupational types and their characteristics. Plaintiff's entire argument that the vocational expert's interpretation was incorrect is a general definition of "machine" in an online dictionary. Plaintiff cites no case, statute, regulation, or DOT

definition to support his argument. The Court is not convinced, particularly in light of the clear distinction in the DOT definitions for machine-related jobs and automobile-related jobs, that the vocational expert was ill-informed.

The Court concludes that the ALJ posed an appropriate hypothetical to the vocational expert, containing all of Plaintiff's limitations as recommended by the examining and reviewing physicians. Plaintiff's argument that the vocational expert was mistaken as to the meaning of the limitations is not persuasive. The ALJ properly relied on the vocational expert's opinion, and the decision is supported by substantial evidence in the record.

**C. Whether the ALJ Adequately Developed the Record**

To support his applications for benefits, Plaintiff supplied two documents to the Social Security Administration: a one-page "Doctor's Certificate" completed by Dr. Cirullo, Plaintiff's chiropractor, on September 8, 2004, and a one-page document from Hoyt Radiology Services, dated March 21, 2005, which stated Plaintiff had some disc degeneration of the lumbar spine. (AR 93.) Plaintiff also underwent a consultative examination on November 14, 2005, the report of which is included in the record and indicates that Plaintiff is able to work. (AR 94-97.) A reviewing physician subsequently agreed with the examining physician's assessment, and the record contains this report as well. (AR 105.)

The ALJ, referring to the paucity of medical records supporting Plaintiff's claim, continued the hearing for three months to enable Plaintiff to obtain additional medical records. (AR 131.) Plaintiff ultimately provided records from an April 26, 2006, emergency room visit, a May 30, 2006, follow-up visit to the community care facility, and an August 24, 2006, MRI. These few records represent all of the

treatment Plaintiff had received for his claimed impairments from the alleged onset date of his disability until September 2006. As the ALJ determined, without challenge by Plaintiff, these records show that Plaintiff has mild cervical strain and mild disc disease. (AR 15.)

Plaintiff argues that the ALJ failed to develop the record by refusing Plaintiff's request for a second consultative examination, in light of the ALJ's conclusion that Plaintiff's sparse medical records did not support a disability finding. (Joint Stip. 14-15.) Plaintiff contends, "Such evaluation was clearly necessary to properly evaluate the Plaintiff's condition." (Joint Stip. 21.) Plaintiff's argument is without merit.

Where the medical records include ambiguous evidence, or inconclusive or otherwise inadequate information, the ALJ has a duty to seek clarification or additional evidence from medical sources. *Mayes v. Massanari*, 276 F.3d 453, 459 (9th Cir. 2001); *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001). Under such circumstances, the ALJ may develop the record in several ways, such as "subpoenaing the claimant's physicians, submitting questions to the claimant's physicians, continuing the hearing, or keeping the record open after the hearing to allow supplementation of the record." *Tonapetyan*, 242 F.3d at 1150. Another option is for the ALJ to order a consultative examination to supplement the record, but "[t]he government is not required to bear the expense of an examination for every claimant." *Reed*, 270 F.3d at 841-42 (citations omitted).

Here, the ALJ did not determine that the record was inadequate for him to make a finding as to Plaintiff's impairments, which would trigger his duty to expand the record. Nor did the ALJ find any ambiguity or inconclusive results in the medical records. Instead, the ALJ found that

the records, including Plaintiff's most recent MRI,[8] demonstrated that Plaintiff had mild degenerative changes in his spine. The ALJ's emphasis on the minimal treatment records is more relevant to his determination that Plaintiff's subjective complaints were not credible, not that the existing records were insufficient for him to make a decision as to the extent of Plaintiff's alleged disability.

Moreover, Plaintiff did undergo a consultative examination in 2004. The consulting physician determined that Plaintiff was not precluded from working, and the ALJ adopted his opinion. Although Plaintiff mentions that the consultative examination occurred nearly two years before the hearing (Joint Stip. 14), he makes no effort to explain why the two-year gap is important or how the examination was insufficient. Plaintiff does not contend that his symptoms have recently worsened or that anything has changed since 2004. In fact, the medical records Plaintiff provided to the ALJ from 2006 indicated that Plaintiff's impairments were mild. Plaintiff has provided no valid reason for requiring a second consultative examination,[9] and the ALJ's decision not

---

[8] The MRI findings are as follows: "Anterior and posterior elements are aligned normally. Intervertebral discs demonstrate diffuse disc desiccation. Disc height loss is seen at C5-6, C6-7, and C7-T1 intervertebral discs. Bone marrow signal demonstrates mild modic changes. Prevertebral soft tissue is unremarkable. There is mild posterior disc bulge seen at C4-5 level and C5-6 and C6-7 level with very mild spinal canal stenosis with no significant mass effect seen.... There is no cord signal abnormality noted. There is moderate neural foraminal stenosis seen at the level of C2-3 on the left. There is mild neural foraminal stenosis seen on the right at C3-4 level. There is mild bilateral neural foraminal stenosis seen at C5-6 level. Mild neural foraminal stenosis also seen at C7-T1 level bilaterally." (AR 116.)

[9] Plaintiff's only stated reason for requesting a second consultative examination was that his indigence prevented him from seeking appropriate medical care. However, Plaintiff did seek care on three different occasions during the three-month continuance between hearings, and the ALJ rested his decision, in part, on those records. It is not the case that Plaintiff had a complete absence of medical records from which the ALJ could make a disability determination. Plaintiff's

15

to order one is supported by the record.

Substantial evidence supports the ALJ's decision that the records were not inconclusive, ambiguous, or otherwise inadequate to make a disability determination. Although the medical records Plaintiff provided were sparse, the ALJ concluded from those records that Plaintiff's impairments were not sufficiently debilitating to preclude working. The Court agrees with his conclusion.

**IV. Conclusion**

For the reasons stated above, the decision of the Social Security Commissioner is **AFFIRMED**.

DATED: February 14, 2008

_____
MARC L. GOLDMAN
United States Magistrate Judge

---

claimed indigence and inability to seek treatment over the years are not relevant to the question of whether the existing records formed a sufficient basis to support the ALJ's decision.